UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America          :
                                  :
          v.                      :          File No. 2:04-CR-87
                                  :
Theodore Brown                    :

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Papers 36, 41, 55 and 61)

Defendant Theodore Brown, proceeding *pro se*, has
filed a motion to vacate, set aside or correct his
sentence pursuant to 28 U.S.C. § 2255.  In his initial
motion and related filings, Brown claims that his guilty
plea was unknowing and involuntary, that his attorneys
were ineffective, and that he was not credited for time
served.  The government has opposed the motion, arguing
in part that defense counsel's strategic decisions were
sound, and that Brown's factual claims are directly
controverted by testimony and events at his change of
plea and sentencing hearings.  For the reasons set forth
below, I recommend that Brown's motion be DENIED.

Factual Background

Brown was arrested in April, 2003, after Border
Patrol agents observed him carrying backpacks containing
marijuana across the Canadian border and into the United
States.  After his arrest, he was detained pending trial.

Although initially charged by indictment, Brown was subsequently charged in an information and the indictment was dismissed.  Upon dismissal of the indictment, Brown was released on conditions.  Shortly thereafter, he was arrested, tried, and convicted on a state charge of drunk driving.  While serving his time in a state facility, a federal detainer was allegedly lodged against him.  Brown now claims that the state denied him bail because of the pending federal detainer, and that he did not receive proper credit on his federal sentence for the time he spent in state custody.

On June 25, 2004, Brown was arraigned in this Court on a charge of conspiring to import 100 kilograms or more of marijuana.  At the arraignment, he pled not guilty and the Court ordered that he be detained pending trial. Brown was represented at that time by Robert McDowell, Esq.  In a status conference on August 27, 2004, Brown informed the Court that he might be requesting new counsel.  In September, 2004, Attorney McDowell was permitted to withdraw, and the Court appointed David Williams, Esq. as defense counsel.  On October 27, 2004, Brown pled guilty to the charged offense.

A sentencing hearing was held on March 8, 2005. Brown's adjusted offense level was 32, and his criminal history category was VI.  With credit for acceptance of responsibility, the guideline range was 188 to 235 months.  Due to Brown's prior felony drug conviction, the offense carried a 10-year mandatory minimum sentence. The government recommended a downward departure to 130 months.  In calculating the sentence, the Court took into account, *inter alia*, Brown's mental health history and the time served on his state charges.  The Court ultimately sentenced Brown to 100 months in prison. Brown did not appeal his conviction and sentence.

Discussion

I.   Legal Standard

To prevail in a habeas corpus motion under § 2255, a defendant must demonstrate (1) that the sentence was imposed in violation of the Constitution or laws of the United States, (2) that the court was without jurisdiction to impose such sentence, (3) that the sentence was in excess of the maximum authorized by law, or (4) that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255.  If there was no

direct appeal, a § 2255 motion is procedurally barred unless it is based on constitutional or jurisdictional claims or would result in a "complete miscarriage of justice."  Johnson v. United States, 313 F.3d 815, 817 (2d Cir. 2002).  In addition, a defendant may not assert a claim in a § 2255 motion that he or she failed to raise on direct appeal unless the defendant shows cause for the omission and prejudice resulting therefrom, or actual innocence.  See Bousley v. United States, 523 U.S. 614, 622 (1998); Campino v. United States, 968 F.2d 187, 190-91 (2d Cir. 1992).  One exception to this rule is that a claim for ineffective assistance of counsel may be brought regardless of whether it was raised on direct appeal.  Massaro v. United States, 538 U.S. 500, 504 (2003).

II.  Involuntary and Unknowing Plea

Brown first claims that his guilty plea was "unlawfully induced or not made with the understanding of the nature of the charge and the consequences of the plea."  (Paper 36 at 1).  Brown alleges that his mental illness prohibited him from understanding both the nature and consequences of his plea.  He also claims that he was

4

informed by counsel that a plea agreement would result to

a sentence of only five years.  In a supplemental motion,

he claims that he was denied medication prior to his

plea.[1]  He further claims that counsel erroneously

advised him that statements made in a proffer could be

used against him at trial, with the result being a

sentence of 25 years to life.  Brown argues that

counsel's advice was a "threat" and "a clear attempt to

make defendant plead guilty."  (Paper 41 at 1).

   Brown's arguments run counter to his sworn testimony

at the change of plea hearing.  The hearing began with

the Court inquiring of counsel as to the status of the

case.  Brown himself informed the Court that this was "a

pretty clear-cut case and I am guilty of the charge," and

that he was prepared to enter a guilty plea.  (Paper 44-

5, Change of Plea Hearing Tr. at 6).  When the Court

turned to Attorney Williams to ensure that Brown's

decision had been made with the benefit of advice from

counsel, Williams confirmed for the Court that he had

reviewed the options with his client and that Brown

_____

[1]  The government has responded to the substance of the supplemental
motion, and has not opposed Brown's motion for leave to file a supplement.
The motion for leave to supplement (Paper 41) is, therefore, GRANTED.

"understands what they are."  Id. at 6-7.  After a brief
discussion on a related matter, the Court asked Brown,
"as to the question about whether you want to enter a
plea of guilty . . . what's your response, yes or no?"
Id. at 9.  Brown again stated that he was prepared to
plead guilty.

Accordingly, the Court engaged in the colloquy
required by Fed. R. Crim. P. 11.  In response to a
specific question from the Court about medication, Brown
stated that he was on medication for mental illness, and
that he had taken his medication on the morning of the
hearing.  Id. at 11.  Brown further testified that he
understood his rights; that no one had threatened or
forced him in any way to plead guilty; that he was aware
of the minimum ten-year sentence for his offense; and
that no one had "made any promises or predictions as to
what sentence [he was] likely to receive."  Id. at 12-17,
22.  Finally, in response to the question of whether he
was "pleading guilty freely and voluntarily, with a full
understanding of the nature of the charges and the rights
that you are waiving," Brown responded in the
affirmative.  Id. at 26.  The Court ultimately accepted

Brown's guilty plea as both knowing and voluntary.

Statements at a plea allocution "carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). "[U]nsupported allegations which merely contradict[] [a defendant's] earlier statements made under oath at his plea allocution" do not provide sufficient grounds for withdrawal of a guilty plea as involuntary. United States v. Gonzalez, 970 F.2d 1095, 1100-01 (2d Cir. 1992); see also United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw [a] guilty plea.").

Here, nearly of all of Brown's current claims are in direct contradiction to his statements at the change of plea. Despite his sworn statements, Brown now contends that he did not understand what was happening and that counsel led him to believe he would receive a five year sentence. In his supplemental motion, Brown claims that he was off his medication at the time of his plea, and that counsel gave him erroneous advice with respect to his proffer. The medication issue, the sentencing range

7

(including the 10-year mandatory minimum), and Brown's understanding of the charges and the consequences of his plea were all specifically addressed at the plea allocution.  Given Brown's statements at the change of plea, and the presumption that those statements were true, his current claims are simply not credible.

With respect to the use of information from the proffer, the government sent Brown and his attorney a letter in April, 2003, explaining that the information provided "will not be used against [Brown] in a criminal prosecution or sentencing proceeding."  (Paper 60-2 at 1).  Brown acknowledged that he understood the terms of the proffer by signing the letter on April 13, 2003, approximately two months prior to the execution of his written plea agreement.  Id. at 2; (Paper 3, Plea Agreement at 11).  Based upon this timeline, Brown cannot now claim that his plea was entered into with the belief that information from the proffer could be used against him either in a superseding indictment or at trial.[2] Consequently, I recommend that Brown's request for habeas

---

[2]  Once the terms of a plea agreement had been finalized, the agreement provided that in the event of a breach, "the Government may use against him statements given by him during proffer sessions with government agents prior to the execution of this agreement."  (Paper 3 at 7).

corpus relief based upon an unknowing and involuntary

plea be DENIED.

III.   Ineffective Assistance of Counsel

     Brown also claims that his attorneys were

ineffective, and that their errors violated his rights

under the Sixth Amendment.  "[T]he proper standard for

attorney performance is that of reasonably effective

assistance."  Strickland v. Washington, 466 U.S. 668, 687

(1984).  The essence of an ineffective assistance claim

is that counsel's unprofessional errors so upset the

adversarial balance between defense and prosecution that

the trial was rendered unfair and the verdict rendered

suspect.  See Kimmelman v. Morrison, 477 U.S. 365, 374

(1986).  Thus, a defendant must establish (1) that

counsel made errors so serious that he was deprived of

reasonably competent representation and (2) that

counsel's deficient performance prejudiced the defense.

See Hernandez v. United States, 202 F.3d 486, 488 (2d

Cir. 2000) (citing Strickland, 466 U.S. at 687-691)).

     One of Brown's primary criticisms is that counsel

was aware of his inability to understand the charges

against him, and that a psychological or psychiatric exam

9

should have been ordered.  The Court saw no such

incapacity or confusion at Brown's change of plea,

finding that based upon his "demeanor and manner while

answering questions, his apparent intelligence and his

attitude," his plea was "competently and involuntarily

made with full knowledge of the charges against him and

the consequences of his plea."  (Paper 44-5, Change of

Plea Tr. at 27).  Moreover, at sentencing, and having

reviewed Brown's extensive mental health records, the

Court stated that "[t]here's no question that [Brown] was

sane at the time of the commission of this offense."

(Paper 44-6, Sentencing Tr. at 5).[3]  Based upon Brown's

medical records and the observations by the Court,

counsel cannot be criticized for failing to question

Brown's ability to enter a valid plea, or for declining

to pursue a psychiatric defense.

    At sentencing, the Court explained that "I have read

the mental health background of the defendant closely,

going way back, up to 2003, report in 2002 and the report

---

[3]  The Court's conclusion was predicated upon competency evaluations as
recent as June, 2003.  In one such evaluation, a psychiatrist opined that
Brown had the mental state required for the charged offenses and was not
insane during the period of time in question.  (Paper 44-3, Pre-sentence
Report, at 18 [Report page 38]); see also (Paper 44-6, Sentencing Tr. at
4-5) (referencing recent psychiatric reports).

in 2003, and am fully aware of Mr. Brown's psychological

profile at this point."  (Paper 44-6, Sentencing Tr. at

7).  The Court also made clear that Brown's mental health

history would be factored into the sentence calculation.

Id. at 5-7.  Brown contends that counsel erred by failing

to move for a downward departure based upon diminished

capacity.  In fact, counsel did file a motion for a

downward departure based upon diminished capacity (Paper

28), but did not pursue it after the Court confirmed that

Brown's mental illness would be considered.  Id. at 4-7.[4]

     Brown further claims that counsel should have moved

for downward departures based upon "lesser harms" and

"coercion and duress."  With respect to both of these

claims, Brown alleges that he was forced to smuggle drugs

because "his life was in danger due to a theft of a large

amount of cash."  (Paper 36 at 3).  Section 5K2.12 of the

Sentencing Guidelines permits a court to depart downward

"[i]f the defendant committed the offense because of

serious coercion, blackmail or duress, under

circumstances not amounting to a complete defense."

---

[4]  Brown recently filed a motion to supplement the record with copies of
his medical records from 1997 through April, 2003.  The motion to
supplement (Paper 61) is GRANTED.

U.S.S.G. § 5K2.12.  The Guidelines require that coercion
be the cause of the crime, and warn that "duress is a
discouraged basis for departure because it is 'not
ordinarily relevant [to] whether a sentence should be
outside the applicable guidelines range.'"  United States
v. Cotto, 347 F.3d 441, 445-46 (2d Cir. 2003) (citations
omitted).

Brown submits that his crime was solely the result
of a threat on his life.  He makes this claim
notwithstanding the fact that he is a career criminal
with a record spanning approximately forty years.
Moreover, it is clear from the Pre-sentence Report that
Brown began his involvement in drug smuggling prior to
the alleged theft that resulted in a threat on his life.
(Paper 44-2 at 6-7).  These facts belie his claim that
duress caused him to engage in criminal activity.

In sum, the decisions made by Brown's attorneys
appear to have been reasonable based upon the record
currently before the Court.  Moreover, when an attorney
is accused of ineffective assistance, courts are required
to "indulge a strong presumption that counsel's conduct
falls within the wide range of reasonable professional

assistance."  Strickland, 466 U.S. at 689.  "[S]trategic

choices made after thorough investigation of law and

facts relevant to plausible options are virtually

unchallengeable."  Id. at 690.

Here, Brown's attorneys made a strategic decision

not to proceed to trial on an insanity defense.  This

decision was supported by Brown's recent competency

evaluations.  Counsel also made the strategic decision to

not pursue a diminished capacity departure once the Court

made clear that Brown's mental health history would be

taken into account.  Counsel further chose not to raise

the issue of coercion, which decision was reasonable in

light of Brown's long criminal history and his

involvement in drug smuggling prior to the alleged

threat.  Because counsel's decisions were supported by

the factual record, and giving the attorneys the required

deference with respect to their strategic decisions, I

recommend that Brown's claims of ineffective assistance

of counsel be DENIED.[5]

---

[5]  To the extent that Brown claims ineffective assistance based upon
Attorney McDowell's alleged representation that a plea would lead to a
five-year sentence, any question as to the potential length of sentence or
the effect of promises made to the defendant were, as discussed above,
addressed thoroughly at the change of plea hearing.  Given Brown's sworn
statements at the change of plea, and in light of his written
acknowledgement of understanding with respect to the proffer, the Court

IV.   Failure to Give Credit for Time Served

Brown's next argument is that he was not given credit for time he served in a state facility while a federal detainer was lodged against him.  The government first argues that this argument is barred for failure to raise it on direct appeal.  As the Second Circuit has held, the "failure to raise a claim on direct appeal is itself a default of normal appellate procedure, which a defendant can overcome only by showing cause and prejudice."  Campino v. United States, 968 F.2d 187, 190 (2d Cir. 1992); see also Riascos-Prado v. United States, 66 F.3d 30, 34 (2d Cir. 1995) ("As a general rule, if a defendant fails to raise a claim on direct appeal, he is barred from advancing it in a subsequent § 2255 petition unless he can show cause for his procedural default and actual prejudice resulting from the error.").  Brown has made no attempt to show cause, defined as "something external to the petitioner" that "cannot be fairly attributed to him," for his failure to raise this issue on direct appeal.  Coleman v. Thompson, 501 U.S. 722, 753

---

can see no harm in the alleged failure to dismiss McDowell at an earlier
stage in the proceeding.

14

(1991).  This claim is, therefore, procedurally barred.

Even if the claim were not barred, the record makes clear that Brown's time served for his state offense was accounted for in his sentence calculation.  (Paper 44-6, Sentencing Tr. at 13-17, 26-28, 32-33).  At sentencing, the Court carefully considered whether Brown's time served while detained on the initial indictment, as well as his time served in state prison, would be considered when the Bureau of Prisons executed his sentence.  In the end, the Court decided to grant the government's motion for a departure under U.S.S.G. § 5G1.1, and to drop Brown's offense level from 32 to 24.  As the Court explained, "I am giving you credit for the time that you have already served in connection with the state charge, although that certainly was not obligated – it's not obligated to do that in any way."  Id. at 32-33.  The departure to level 24 resulted in a decrease in the sentencing range that far exceeded the time Brown allegedly spent in state custody after the federal detainer was lodged against him.  Therefore, Brown is not entitled to relief on this claim.

V.   Question Concerning Plea Agreement

   The final issue Brown raises is his "confusion"
about the effect and content of the plea agreement.
Brown entered into his plea agreement prior to the
dismissal of the initial indictment and his subsequent
release in 2003.  Brown claims that he is "confused as to
whether he was sentenced pursuant to the dismissed plea
agreement or whether the government changed the plea
agreement."  (Paper 36 at 2).

   The docket shows that the plea agreement is the same
agreement that was entered into in 2003.  In fact, at the
change of plea hearing it was Brown who informed the
Court that he wanted to enter a plea of guilty pursuant
to the previously-executed plea agreement.  (Paper 44-5,
Change of Plea Tr. at 6).  The parties subsequently
adhered to the terms of the agreement, including the
provision allowing for a government motion based upon
substantial assistance.  Although Brown may currently be
confused about the role of his plea agreement, the record
shows that the parties suffered from no such confusion at
either the change of plea or at sentencing.
Consequently, Brown is not entitled to any form of

collateral relief on this claim, and his § 2255 motion

should be DENIED.

### Conclusion

            For the reasons set forth above, I recommend that

Brown's motion to vacate, set aside, or correct his

sentence (Paper 36) be DENIED.   Brown's motions to

supplement his original § 2255 motion (Papers 41 and 61)

are GRANTED, and his motion to compel adjudication (Paper

55) is DENIED as moot.

     Dated at Burlington, in the District of Vermont,

this 6th day of February, 2007.


                              /s/ Jerome J. Niedermeier
                              Jerome J. Niedermeier
                              United States Magistrate Judge


Any party may object to this Report and Recommendation
within 10 days after service by filing with the clerk of
the court and serving on the magistrate judge and all
parties, written objections which shall specifically
identify the portions of the proposed findings,
recommendations or report to which objection is made and
the basis for such objections.  Failure to file
objections within the specified time waives the right to
appeal the District Court's order.  See Local Rules 72.1,
72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b),
6(a) and 6(e).